# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LUIS A. COELLO-UDIEL,

    Petitioner,

v.

CLAIR DOLL, et al.,

    Respondents.

NO. 3:17-CV-1414

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Report and Recommendation of Magistrate Judge William I. Arbuckle (Doc. 6), which recommends that I grant Petitioner Luis A. Coello-Udiel's ("Coello-Udiel") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 directing that a bond hearing be held in his removal proceedings. (Doc. 1.) Because the Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. ___, 138 S.Ct. 830 (2018), decided after the Report and Recommendation was issued, has abrogated the Third Circuit cases on which the Report and Recommendation is based, the Report and Recommendation will be rejected.

## I. Background

The parties do not dispute the relevant facts or procedural history. On August 10, 2017, Coello-Udiel, a lawful permanent resident, filed a Petition for Writ of Habeas Corpus which alleged he had been detained for removal proceedings. (Doc. 1.) Coello-Udiel alleges he was arrested by Immigration and Customs Enforcement ("ICE") on February 7, 2017, and has been detained since then. *Id.* at ¶ 12.

On February 28, 2017, Coello-Udiel appeared with counsel in immigration court for his first master calendar hearing, and the Court granted his counsel's request for a continuance to prepare. (Doc. 14, Ex. 1 at ¶ 2.) On March 1, 2017, the Department of Homeland Security ("DHS") filed a notice that it was ready to proceed and objected to any further continuances. (Doc. 14, Ex. 2.) On March 14, 2017, the immigration C

ourt sua sponte rescheduled Coello-Udiel's master calendar hearing. (Doc. 14, Ex. 1 at ¶ 5.) On March 15, 2017, and March 29, 2017, Coello-Udiel was released to Lancaster County on a writ. *Id.* at ¶ 6.

Coello-Udiel appeared with counsel at a master calendar hearing on April 3, 2017, where he filed a motion to suppress evidence and to terminate the proceedings. *Id.* at ¶ 7. The Court adjourned the case to June 14, 2017, for a suppression hearing. *Id.*

On May 3, 2017, DHS received Coello-Udiel's relief application and memorandum in support of his motion to suppress and terminate. *Id.* at ¶ 8. On June 8, 2017, Coello-Udiel filed a motion to cancel the hearing scheduled for June 14, 2017. *Id.* at ¶ 9. On June 12, 2017, the Court granted the motion. (Doc. 14, Ex. 3.)

On July 18, 2017, DHS received Coello-Udiel's motion to terminate the removal proceedings. (Doc. 14, Ex. 1 at ¶ 10.) On August 4, 2017, DHS received a motion from Coello-Udiel to strike the DHS pleadings. *Id.* at ¶ 12. The Court then sua sponte continued the merits hearing scheduled for August 10, 2017. *Id.* at ¶ 13.

On August 28, 2017, the parties argued Coello-Udiel's suppression motion. *Id.* at ¶ 14. On September 13, 2017, the immigration Court issued a written decision denying suppression and termination. (Doc. 14, Ex. 4.)

On September 18, 2017, Coello-Udiel appeared at what his counsel thought would be a merits hearing, but the Court had scheduled the case for a master calendar hearing, so the Court adjourned to October 13, 2017, for a merits hearing. (Doc. 14, Ex. 1 at ¶ 16.) On September 20, 2017, DHS filed additional evidence. *Id.* at ¶ 17. On October 13, 2017, the merits hearing did not take place, presumably continued by the Court sua sponte. *Id.* at ¶ 18. The merits hearing scheduled for November 14, 2017, was also continued. *Id.*

On December 14, 2017, the immigration Judge conducted a hearing on the merits of Coello-Udiel's applications for relief, denied relief, and ordered Coello-Udiel removed to Honduras. (Doc. 14, Ex. 5, 6.) Coello-Udiel reserved appeal. *Id.*

On January 8, 2018, Coello-Udiel filed a notice of appeal to the Board of Immigration Appeals ("BIA"). (Doc. 14, Ex. 7.) On February 12, 2018, DHS received the BIA briefing schedule and filed its motion for summary affirmance on March 2, 2018. (Doc. 14, Ex. 8.) Coello-Udiel's brief was filed on March 1, 2018. (Doc. 1, Ex. 1 at ¶ 21.) The appeal remains pending. *Id.*

Coello-Udiel filed the instant Petition for Writ of Habeas Corpus on August 10, 2017, alleging that his detention would, "in all likelihood," be extended into a "lengthy period of time" as he planned to appeal any adverse decision issued by the immigration court to the BIA and the Third Circuit. (Doc. 1 at ¶¶ 16-17.) Thus, in anticipation of what would be a lengthy detention while he pursued all available means of relief from removal, Coello-Udiel requested that he be provided with immediate release or a bond hearing before an immigration judge. *Id.* at p. 11.

On February 22, 2018, Magistrate Judge Arbuckle recommended that Coello-Udiel's Petition be granted because Respondents had not opposed his request for a hearing, and because existing Third Circuit case law appeared to require one. (Doc. 6.) On April 19, 2018, Respondents filed Objections to the Report and Recommendation, arguing that the February 27, 2018, Supreme Court decision in *Jennings v. Rodriguez* had implicitly overturned the existing Third Circuit precedent and therefore required that Coello-Udiel's Petition be dismissed. (Docs. 13, 14.) On April 26, 2018, Coello-Udiel filed his Response in support of the Report and Recommendation. (Doc. 15.) Therefore, this Petition is now ripe for disposition.

## II. Legal Standard

When objections to a magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).

3

### III. Discussion

The outcome of the instant motion depends on whether the Supreme Court's recent decision in *Jennings* overturned Third Circuit precedent requiring a hearing in the circumstances presented here. Since this question has not been previously decided, I will discuss the relevant case law in detail.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). 8 U.S.C. § 1226(c),[1] which requires the Attorney General to detain aliens convicted of certain crimes, was enacted to address the issue of such aliens fleeing while released on bond. *Demore v. Kim*, 538 U.S. 510, 518-19 (2003). "Notably, section 1226(c) does not give the Attorney General any authority to release these aliens on bond." *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 473 (3d Cir. 2015)(citing *Demore*, 538 U.S. at 521). The *Demore* Court recognized that aliens are protected by constitutional due process. 538 U.S. at 523. However, the Court explained that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 521 (quoting *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976)). "The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c)." *Chavez-Alvarez*, 783 F.3d at 473. Thus, the *Demore* Court held that the Government's authority under § 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. 538 U.S. at 531.

---

[1] "The Attorney General shall take into custody any alien who [commits certain crimes]. The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary [for witness protection purposes], and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled hearing." 8 U.S.C. § 1226(c). The parties do not dispute that Coello-Udiel is subject to mandatory detention under this statute.

However, the Third Circuit has "read *Demore* as also recognizing that there are limits to this power." *Chavez-Alvarez*, 783 F.3d at 473 (citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011); *Leslie v. Attorney Gen. of the United States*, 678 F.3d 265 (3d Cir. 2012)). Specifically, the *Chavez-Alvarez* Court recognized that *Demore* held that mandatory detention of certain criminal aliens pending removal proceedings does not in itself offend due process, but also noted that the *Demore* Court based this ruling upon the short, fixed, and finite term of pre-removal detention. *Id.* at 474. Justice Kennedy highlighted this in his concurring opinion in *Demore*. 538 U.S. at 532-33 (Kennedy, J., concurring)("Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. That is not a proper inference, however, either from the statutory scheme itself or from the circumstances of this case."). Consequently, the *Chavez-Alvarez* Court read a reasonable time limit into the statute, relying on the Court's earlier decision in *Diop*, which employed the doctrine of constitutional avoidance to come to this conclusion. *See Chavez-Alvarez*, 783 F.3d at 475; *Diop*, 656 F.3d at 231 ("Applying this principle [of constitutional avoidance] to § 1226(c), we conclude that the statute implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes."). The *Chavez-Alvarez* Court further clarified that, in the case of an alien who is prosecuting a good faith challenge to his removal, the "tipping point" at which an alien's interest in liberty outweighs the interests advanced by § 1226(c) occurs sometime after the six-month time frame considered in *Demore* and before the alien has been detained for one year. *Id.* at 478."[W]hen detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." *Diop*, 656 F.3d at 233.

Applying the standard articulated in *Chavez-Alvarez* and *Diop* to the case at hand, the Magistrate Judge concluded, and Respondents did not contest at the time, that a hearing was warranted under the facts of this case. However, the Supreme Court subsequently held in *Jennings v. Rodriguez* that § 1226(c) could not be plausibly interpreted as placing a six-month limit on detention or requiring periodic bond hearings. 138 S.Ct. at 846. In the case which *Jennings* overturned, the Ninth Circuit drew the same conclusion as the Third Circuit had in *Chavez-Alvarez* and *Diop*: that, in order to avoid "constitutional concerns, § 1226(c)'s mandatory [detention] language must be construed to contain an implicit reasonable time limitation." *Rodriguez v. Robbins*, 804 F.3d 1060, 1079 (9th Cir. 2015)(internal quotations omitted)). Addressing this, the Supreme Court explained that to apply the canon of constitutional avoidance, the statute at issue must be susceptible of more than one construction and the proposed reading of that statute must be plausible. *Jennings*, 138 S.Ct. at 842. The Court went on to conclude that, because the language of § 1226(c) is unambiguous, it cannot plausibly be construed to contain an unstated temporal limitation on detention. *Id.* at 846 ("1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'") (quoting 8 U.S.C. § 1226(a)). In light of this holding, it is clear that the Third Circuit's decisions in *Chavez-Alvarez* and *Diop* have also been abrogated, since they relied on the doctrine of constitutional avoidance to read a reasonable time limitation into the statute. Coello-Udiel is therefore not entitled to a hearing under either of those cases.

To the extent Coello-Udiel argues that § 1226(c) is unconstitutional as applied to him, his claim fails. In general, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. 510. In *Zadvydas v. Davis*, the Supreme Court held that the post-removal-period detention statute, read in light of the Constitution's demands, implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the

6

United States. 533 U.S. at 699. The *Demore* Court later distinguished the case before it from that in *Zadvydas*, finding that § 1226(c) is constitutional on its face because, unlike post-removal-period detention, it does not allow for indefinite detention and the detentions it requires are frequently short in duration. 538 U.S. at 531; *see also Zadvydas*, 533 U.S. at 697 ("[P]ost-removal detention, *unlike detention pending a determination of removability* or during the subsequent 90-day removal period, has no obvious termination point.")(emphasis added). Still, as the Third Circuit observed in *Chavez-Alvarez*, the *Demore* Court partially based its decision on the short, fixed and finite term of any detention prior to removal. *Demore*, 538 U.S. at 529-530. The *Jennings* Court explicitly declined to reach the merits of the petitioners' constitutional arguments.138 S.Ct. at 851. Consequently, it is unclear under current Supreme Court precedent at what point a detention pursuant to § 1226(c) becomes unreasonable without a hearing, making continued detention unconstitutional in a particular case.

In *Demore*, the petitioner, a lawful permanent resident, had already been detained for six months prior to the District Court's order granting habeas relief. *Id.* at 531. The Court conceded that this was longer than the average period of detention under § 1226(c), but observed that the respondent himself had requested a continuance of his removal hearing. *Id.* As noted above, Justice Kennedy also seemed to find it significant that the delays were caused by the petitioner, hypothesizing that an inference of unreasonableness could arise in a situation where there was "an unreasonable delay *by the INS* in pursuing and completing deportation proceedings." *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring)(emphasis added). Rejecting the respondent's argument that "the length of detention required to appeal may deter aliens from exercising their right to do so," the *Demore* Court explained that "the legal system [] is replete with situations requiring the making of difficult judgments as to which course to follow, and even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices." 538 U.S. at 530 n. 14 (internal quotations omitted).

Here, Coello-Udiel has submitted no evidence that the government has improperly or unreasonably delayed the regular course of proceedings, or that the government has detained him for any purpose other than the resolution of his removal proceedings. In fact, his case has proceeded with hearings at regular intervals, and none of the delays were at the government's request. Further, the justifications for detention under § 1226(c) continue to be served, perhaps more than ever now that an order of removal has been entered, since an alien who has already been ordered removed has less to lose by fleeing while released on bond. Having been ordered removed, the only reason Coello-Udiel is still detained under § 1226(c) is his appeal of the order of removal, and the appeal is proceeding at a reasonable pace (according to the record, it is currently pending since Coello-Udiel filed his brief on March 1, 2018, and DHS has already filed for summary affirmance). While Coello-Udiel certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing.

### IV. Conclusion

For the above stated reasons, Coello-Udiel's Petition for Writ of Habeas Corpus will be denied.

An appropriate order follows.

May 14, 2018　　　　　　　　　　　　　　　　/s/ A. Richard Caputo
Date　　　　　　　　　　　　　　　　　　　　A. Richard Caputo
　　　　　　　　　　　　　　　　　　　　　　United States District Judge